# IN THE MATTER OF JOHN H. WILSON, A BANKRUPT.

## April 13, 1910.

*Equitable assignment—Notice:* Any writing or act which shows an intention to transfer a specific fund in the hands of another is an equitable assignment, and is complete when notice is given to the fund holder.

*Same—Validity thereof—Notice:* An assignment of a debt requires for its validity as to third parties notice to the debtor, but not acceptance by him.

*Preference—Transfer of property:* A transfer of property by a person who later becomes bankrupt, is complete in relation to the question of preference (Bankr. act, sec. 60a), when made, and is not affected by want of notice.

*In Bankruptcy*: Question certified up from referee.

*Wade Warren Thayer,* Trustee.
*R. W. Breckons,* Attorney for Assignees.

DOLE, J. Proceedings in this case were begun by the filing of the petition for adjudication on the 27th day of March, 1907.

Adjudication was made on the 4th of April, 1907. On the 8th day of December, 1907, a petition was filed by the trustee to the referee in this case, stating that he had received as part of the assets of the bankrupt, $4,710.22 from the County of Kauai, being the amount due to the bankrupt for work done by him prior to the institution of these proceedings; that more than four months prior to the institution of these proceedings, to wit, on or about the 15th day of November, A. D. 1906, the bankrupt executed and delivered to Lewis & Company, Ltd., his written assignment for $1,904.32 of the amount owed him by the County of Kauai for such work, and to E. O. Hall & Son, Ltd., $662.88 out of such amount due him, and to the Hawaiian Sugar Company $760.58 of such amount; and on the 7th day of January, 1907, less than four months before the petition in bankruptcy, he executed and delivered to the von Hamm-Young Company, Ltd., his written assignment for $446.70, on account of such amount due him; that claims have been filed by employes of the bankrupt for $2,298.10 which are entitled to payment in full; that such sum of $4,710.22 was received by him subject to the claims of such parties who had received assignments of portions of such sum and that he believes he cannot, without danger of liability upon his bond, pay the amounts covered by such assignments without an adjudication as to who is entitled thereto; that he believes there are not sufficient funds on hand or recoverable in these proceedings to pay the expenses of administration and the claims of such employes and of such assignees. On these grounds the trustee submitted the following question for adjudication: "Are the claims of said Lewis & Company, Ltd., E. O. Hall & Son, Ltd., Hawaiian Sugar Company and the von Hamm-Young Company, Ltd., or any of the same, entitled to be paid in full out of the funds of this estate?" Mr. Brock, the referee, certified this question to the court for its opinion thereon.

The claims of von Hamm-Young Company, Ltd., and the Hawaiian Sugar Company were not urged at the hearing. The trustee waives all question of fraud or bad faith, and admits

that the assignments were made in good faith and for value.

On the 15th of November, 1906, as hereinbefore stated, John H. Wilson, on blanks provided by the board of supervisors, assigned to the said two remaining assignees all of his interest in the said respective amounts. It appears that the County of Kauai, at the time the assignments were made, owed the money covered by them to Wilson, although it was a question whether it was then due.

The question arising under this reference is whether such assignments were effective without notice having been given to the Board of Supervisors by the assignees before the beginning of the four months previous to the filing of the petition in bankruptcy.

Counsel for the assignees cites the case of *Sabin v. Camp*, 98 Fed. Rep. 974. In this case a petition in bankruptcy was filed December 28, 1898, previous to which time, in 1897, the company against whom the petition was filed had entered into an agreement with the defendant for advances by which it obtained a lease of a building and furnished the same as a cafe and music hall, which advances it was to repay upon defendant's demand after six months from the first loan, failing which, the defendant was to have possession of the premises to secure him for such advances, with the option of buying the same for the consideration of such advances and the payment of an additional amount of money sufficient to make up the agreed price. The company defaulted payment and the defendant went into possession more than four months before the petition in bankruptcy was filed, and, within four months of such time, paid to the company the additional amount necessary to make up the agreed price over the debt, and took the company's bill of sale and assignment of lease for the premises. The trustee adopted the sale and brought suit to recover from defendant the amount of the purchase price of such sale. To the answer of defendant setting forth these facts, the plaintiff demurred and the demurrer was overruled.

It will be seen that the defendant upon the agreement with

the company which became bankrupt, entered into possession of the premises of such company according to the agreement, before the four months previous to the filing of the petition for adjudication began to run, which act created a lien on the property and he was justified afterwards, under the agreement, even though such four months had begun to run, in purchasing the property which required the payment of money in addition to the debt which he had against the company. The court ruled that the transfer was not a preference under the bankrupt act.

In the case before this court the assignments were made previous to four months before adjudication and recited the consideration "for value received," and were in the nature of bills of sale. Being for choses in action the assignments can only be considered as equitable. Were they complete without notice to the bankrupt's debtor before the four months previous to adjudication began to run, a part of whose debt to the bankrupt was thus attempted to be transferred? In *Sabin v. Camp,* supra, the lien resulted before the four months began to run. In the case before the court notice was given after the four months began to run. The assignments were filed in the treasurer's office of the County of Kauai on the 28th and 30th of November, 1906,—less than four months before the petition for adjudication was filed. Although the County of Kauai was not bound by the assignments without notice, were the assignments complete when executed? Although an agreement to pay out of a particular fund is not an equitable assignment, yet an order on it or a transfer of it in such words that the holder of the fund would be authorized to pay it after notice to the person in whose favor the order or transfer is drawn, and would be compellable to do so, even though forbidden by the drawer or assignor, is a valid assignment in equity.

"A bill of exchange or check is not an equitable assignment *pro tanto* of the funds of the drawer in the hands of the drawee. But an order to pay out of a specified fund has always been held to be a valid assignment in equity and to fulfill all the requirements of the law." *Christmas v. Russell,* 81 U. S. 69, 84.

The much cited case of *Yeates v. Groves,* 1 Ves. Jr., 280; 30 Eng. Rep. (Reprint) 343, recites that an order by the bankrupt, for value received, while competent, upon his debtors to pay out of a fund held by them on his account, upon being shown to the debtors, though not accepted by them, created a lien in favor of the holder. "The order fixed the money the moment it was shown to" the debtors. The case of *Ex parte Alderson,* 1 Maddox, 53, 56 Eng Rep. (Reprint) 21, was referred to in *Yeates v. Groves.* There the bankrupt, before bankruptcy and supposedly before insolvency, gave certain creditors an order on the executor of her debtor for their claim, which was presented forthwith to such executor, who, not being prepared then to pay it, did not accept it for any certain time, but retained it to be paid when there should be funds available. The court said:

"I think this was a good equitable assignment of the debt; and that the executor bound himself to pay it when in possession of sufficient assets.   *   *   *   If Jane Row (bankrupt) had remained solvent the petitioners might by a bill in equity have obtained the benefit of the assignment."

In both of these cases the fact of notice appears to have been relied on for the effectuation of the order as an equitable assignment.

The authority mainly relied on by the trustee is *Johnston v. Huff, Andrews & Moyler Co.,* 133 Fed. Rep. 704, in which case White, who afterward became bankrupt, entered into an agreement with a railway company to board its employes, the company to deduct from the wages of its employes the amount due from each of them to White and to pay him such amounts. White arranged with Huff, Andrews & Moyler Company for necessary advances and gave them an order on the railway company "for value received any and all moneys that may now be due me or may hereafter become due me" under such boarding agreement. Such order was not presented to the railway company until the day before White filed his petition in bankruptcy, it having been agreed between Huff, Andrews & Moyler Com-

pany and White that it should not be presented unless White failed to keep up his payments. It was well known that the railway company objected to orders being drawn on it, and that if the order was presented White's boarding agreement would be terminated. Huff, Andrews & Moyler Company petitioned the referee for the balance due them as having been assigned them by the said order, which was granted, and confirmed by the district court, and the trustee appealed. The circuit court of appeals reversed the decree of the district court, saying that "as the creditor delayed the presentation of his assignment or order, and the petition in bankruptcy was filed on the day following, and, as we think, it could only take effect on the day of presentation, it was a transfer on that day for a pre-existing debt; hence a preference within four months. Chapter 3, sec. 3, bankrupt act July 1, 1898, c. 541, 30 Stat. 546. The creditor has jeopardized and forfeited all rights under such order, and the fund ordered to be paid over to Huff, Andrews & Moyler Company on said order by referee and district judge became vested in the trustee for the benefit of the general creditors. At the time the order became effective it was a preference and void. At this time the creditor knew of the proposed bankruptcy proceedings and of the insolvency of White."

Counsel for the assignees contends that this case has no application to the case at bar because it was the understanding that the assignment was not to become effective until it was presented to the railway company, whereas in the present case the assignment was not based upon any further conditions. Although the assignments in the present case made no conditions, may it not be true that the law requires conditions such as notice?

In *Wilson v. Nelson,* 183 U. S. 191, 198, judgment was confessed under an irrevocable power of attorney made years before; execution issued and sale was made, within four months before petition for adjudication was filed. A petition for adjudication against Nelson was filed by his creditors, the alleged act of bankruptcy being that Nelson, while insolvent, suffered

and permitted Johnston, one of his creditors, "to obtain a preference through legal proceedings and not having, at least five days before a sale or final disposition of any property affected by such preference, vacated or discharged such preference." Sec. 3, bankruptcy act, div. 3.  · The court, in deciding that such judgment and sale was a preference, constituting an act of bankruptcy, said, "The act of 1898 makes the result obtained by the creditor, and not the specific intent of the debtor, the essential fact."

Counsel for the assignees contends further in relation to the case of *Johnston v. Huff, Andrews & Moyler Co.,* that if the assignor had died, his assignment would have been inoperative, but that in the present case the death of Wilson would have made no difference.  The rule is "that mere personal torts which die with the party, and do not survive to his personal representative, are not capable of passing by assignment; and that vested rights *ad rem* and *in re,* possibilities coupled with an interest, and claims growing out of, and adhering to property, may pass by assignment."  *Comegys v. Vasse,* 26 U. S. 193, 213.

The sole question is, were the assignments complete before the four months previous to adjudication began to run?  If they were, a lien in the assignees was created and they would also survive in case of death.

There is no requirement in the Hawaiian statutes that bills of sale of chattels must be recorded in order to be valid.  The old common law that a bill of sale of chattels was fraudulent and void unless followed by delivery of the property, is now so modified that continued possession by the vendor only raises a presumption of fraud. · Such presumption is removed by registration.  The principle of law as found in the rule of the common law and the practice under statutes of registration, appears to be that some kind of public notice is essential in all transfers of property so far as the interests of third parties are concerned.  Such notice may be by delivery of the chattels or registry of the bill of sale, or, in the case of transfers of real property, by registration of the conveyance.  The transfer of a

chose in action or any other property to a creditor, is a matter of interest to other creditors, who are likely to be closely watching the course of events in the business of the debtor and who may be prejudiced through ignorance of such a transaction; for instance, through failing to file a petition for adjudication within four months thereafter, where there is insolvency.

" The trend of the decisions in the United States Supreme Court under the recent bankruptcy act upon the subject of the date of the transfer, is in support of the view that, with respect to an instrument of transfer, it is the time when such instrument is recorded, or when possession is taken or notice is otherwise brought home to the creditors of the bankrupt that is controlling." *Matthews v. Hardt,* 9 Am. B. R. 373, 383.

Where the fund holder receives notice of such a transfer, the information, though not strictly a public notice, is obtainable by parties interested. The distinction between a notice and an acceptance must be considered; as for instance a check on a bank to be a complete transfer must be accepted, but an order or other document transferring a specific fund does not need acceptance to make it valid, but notice to the fund holder should be given. *Yeales v. Groves* and *In re Alderson,* supra.

"Any order, writing, or act which makes an appropriation of a fund, amounts to an equitable assignment of the fund. The reason is, that the fund being a matter not assignable by law, nor capable of manual possession, an appropriation of it is all that the nature of the case admits of, and therefore it is held good in a court of equity. As the assignee is generally entitled to all the remedies of the assignor, so he is subject to all the equities between the assignor and his debtor. But in order to perfect his title against the debtor it is indispensable that the assignee should immediately give notice of the assignment to the debtor, for otherwise a priority of right may be obtained by a subsequent assignee, or the debt may be discharged by a payment to the assignee [assignor] before such notice." *Spain v. Hamilton's Administrator,* 68 U. S. 604, 624; 2 Story's Eq. Jurisp., sec. 1047.

In *Kingman v. Perkins,* 105 Mass. 111, and *Kimball v. Leland,* 110 Mass. 325, it was held that an order on a savings bank for the whole amount due the depositor was complete without notice. These cases are, however, distinguishable from the above authorities, in that in both cases the bank book was delivered to the payee with the order; the court in the latter case saying, "we think it clear that it [the order] must be regarded as an instrument of assignment, complete and effectual to transfer the interest of Grace Brown with the delivery thereof with the bank book to which it related." In this case there were no creditors, only heirs of the estate of the drawer, who had deceased.

In view of these facts and considerations, I find that the assignments in question were not complete until notice thereof was given to the County of Kauai, which notice, in both cases, was within four months of the date when the petition for adjudication was filed. But as it appears from all the evidence that the transfers were initiated before the four months began to run, were such transfers preferences under bankruptcy act, sec. 60a, which makes a transfer by an insolvent person within the four months, a preference? Does the act of the insolvent, in order to make it a preference, require its effectuation by notice according to the above finding? I think not. The transfer is complete when the assignment is made, so far as the assignor can complete it. These transfers therefore not having been made within the four months, are not preferences; and this would seem to require an affirmative answer to the submitted question.

During the study of the case by the court, the parties, at its suggestion, submitted the correspondence of the bankrupt and the assignees, bearing on the question of the insolvency of Wilson and also the question whether the assignees had reasonable cause to believe that Wilson intended by the transfers to them to give them preferences. Nothing appears in such correspondence to show either that Wilson was insolvent at the date of the assignments, or that the assignees had any reasonable cause to

believe that a preference was intended. Bankrupt act, sec. 60b. Upon all points therefore the decision must be that the assignees are entitled to be paid in full out of the funds of the estate.